Jagdish R. KHANDELWAL, Plaintiff,

v.

COMPUADD CORPORATION,
Defendant.

No. 91–451.

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 15, 1992.

Vickey Ann Verwey, David R. Simonsen, Jr., Richmond, Va., for plaintiff.

Thamer Eugene Temple, III, McSweeney, Burtch & Crump, Richmond, Va., for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is before the Court on the plaintiff's Motion to Amend Complaint pursuant to Fed.R.Civ.P. 15(a). Every federal court in the United States is now faced with the problem this motion presents. For the reasons outlined below, this motion is denied.

## BACKGROUND

Plaintiff Jagdish R. Khandelwal worked for Compuadd between November 14, 1989, and January 5, 1991, when Compuadd discharged him. Mr. Khandelwal filed his complaint in this case on August 15, 1991, alleging that Compuadd discriminated against and discharged him because of his national origin (Indian) in violation of Title VII of the Civil Rights Act of 1964. In his original complaint, Mr. Khandelwal sought the remedies available under Title VII, as they existed at the time of filing.

On November 21, 1991, President Bush signed the Civil Rights Act of 1991 (the "Act"). The Act amended Title VII and provided new remedies for victims of national origin discrimination. Under the Act, victims of unlawful discrimination may recover compensatory and punitive damages if they prove that the defendant acted "with malice or reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Plaintiffs who seek compensatory and punitive damages under Title VII, as amended by the Act, are also guaranteed a trial by jury. 42 U.S.C. § 1981a(c)(1). Mr. Khandelwal now seeks leave of Court to amend his complaint in order to secure the remedies available to him under the recent congressional enactments. Compuadd has declined to agree to such an amendment, arguing that the Act is not retroactively applicable.

## ISSUE

Are the remedies set forth in the Civil Rights Act of 1991 available to a victim of unlawful discrimination where his case was pending on November 21, 1991?

## DISCUSSION

Mr. Khandelwal argues that he should be allowed to amend his complaint because the language of the Act, the legislative history,

and the prior decisions of the United States Supreme Court demonstrate that the remedies of the new Act are available to victims of unlawful discrimination that occurred before November 21, 1991, the date of enactment. The Court will consider each of these arguments in turn.

A. *The Language of the Act*

The plaintiff claims that Congress clearly intended the Act to apply retroactively. As support for this position, the plaintiff lists five provisions which arguably concern retroactivity:

1. Section 109 states that the provision extending Title VII and the ADA overseas "shall not apply with respect to conduct occurring before the date of the enactment of this Act."

2. Section 110, authorizing the establishment of a Technical Assistance Training Institute, states that it "shall take effect on the date of the enactment of this Act."

3. Section 116 states that "[n]othing in the amendments made by this title shall be construed to affect court-ordered remedies, affirmative action, or conciliation agreements, that are in accordance with the law."

4. Section 402(a), the general statement on the effective date, provides that "[e]xcept as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment."

5. Section 402(b) provides that "[n]othwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983."

The plaintiff argues that if the Act as a whole was not intended to be applied retroactively, then Congress would not have needed to specifically provide that certain provisions, such as the extraterritoriality provisions of § 109, would not be retroactive. Similarly, Mr. Khandelwal claims that the language of § 116 and § 402(b) is wholly unnecessary and mere surplusage, if the remedies of the Act are not retroactive in effect.

It is obvious that no provision of the new Act conveys a clear indication that Congress intended the Act to apply retroactively. *See also, Van Meter v. Barr,* 778 F.Supp. 83 (D.D.C.1991) ("The 1991 Act contains no provision stating specifically whether or not the damages and jury sections cited above apply to cases, such as the present case, already pending in U.S. District Courts.").

The first three provisions cited by the plaintiff—§ 109 (overseas application), § 110 (establishing a Technical Assistance Training Institute), and § 116 (preserving affirmative action plans)—are irrelevant to the issues raised in the present case. The argument that these three provisions would not have been included if Congress had intended the Act to apply only prospectively is one that cannot readily be inferred and invites the Court to speculate as to legislative intent. Moreover, the presence of these three provisions demonstrates that where Congress wanted to express any intent concerning the retroactive application of the Act, it took the initiative to state that intent specifically. If Congress intended the remainder of the Act to apply retroactively, it would have stated so.[1]

The remaining provisions from the Act cited by Mr. Khandelwal are § 402(a) and § 402(b). Section 402(a) provides simply that the Act shall "take effect upon enactment." This nebulous provision is really at the heart of the instant dispute and neither supports nor refutes retroactivity. *See, Van Meter,* 778 F.Supp. at 85 (§ 402(a) "makes no reference to Title VII ... cases that have already been filed in federal court").

Likewise, § 402(b) lends no support to plaintiff's position. As everyone who has

---

**1.** This has certainly been the case in other statutes. *See, e.g.,* The Black Lung Benefits Act, 30 U.S.C. § 945 (provision for processing of benefits claims "pending on, or denied on or before" the effective date of the statute); The Federal Home Loan Bank Act, 12 U.S.C. § 1439a (all monies deposited pursuant to the statute are available both prospectively and retroactively).

followed the enactment of this Act knows, § 402(b) was inserted solely to insure that the Act would not be interpreted to allow further litigation in *Wards Cove Packing Co. v. Atonio*,[2] the only case satisfying this section's prerequisites. Under a settled rule of statutory construction, it could be said that § 402(b) would be meaningless if § 402(a) is not construed as a general rule of retroactivity. However, such a reading is certainly not conclusive, and, in any event, the language of the Act should be considered in light of its legislative history.[3]

Other language in the Act seems to indicate that the Act will apply only prospectively. According to § 102(a) of the Act, only a "complaining party" may seek compensatory and punitive damages and a jury trial. Section 102(d) defines a "complaining party" as "the Equal Employment Opportunity Commission, the Attorney General, or a person who *may bring* an action or proceeding under title VII. ..." (emphasis added). One plausible reading of the statute is, therefore, that, by its own terms, the Act contemplates that only plaintiffs who have not yet brought an action are entitled to invoke the new Act. *See, Van Meter*, 778 F.Supp. at 85.

After examining the provisions of the Act and the arguments of the parties, the Court finds that there is no clear, unambiguous statement as to retroactivity necessary to overcome the presumption of prospective application. Any inference or construction one way or the other would be pure speculation.

**B.  *The Legislative History***

In his brief, the plaintiff cites legislative history favoring retroactive application of the Act. Specifically, the plaintiff quotes a lengthy excerpt from an interpretive memorandum submitted by Representative Edwards (D–Cal.). This memorandum favors application of the Act to pending cases. 137 Cong.Rec. H9530–31 (daily ed. Nov. 7, 1991). In turn, the defendant cites to the remarks of Senator Danforth, a principal sponsor of the Act, who states among other things that "new statutes are to be given prospective application only, unless Congress explicitly directs otherwise, which we have not done in this instance." 137 Cong.Rec. S15483 (daily ed. Oct. 30, 1991).[4]

This sampling of statements, as well as a review of the entire legislative history, confirms that Congress was anything but clear on whether the Act would apply to pending cases. The main Senate sponsors of the Act, Senators Danforth and Kennedy, issued a joint "interpretive memorandum" in which they agreed on every issue except retroactivity. *Id.* The republican senators lined up behind Senator Danforth, asserting that the Act was not intended to be retroactive. The democratic senators adopted the position of Senator Kennedy and asserted that the Act was indeed intended to be retroactive. *Id.* at S15485. The legislative history from the House is

---

**2.**  490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989).

**3.**  As is discussed below, a review of the legislative history shows that Congress was anything but clear on whether the Act would apply to pending cases. However, near the end of the congressional debates concerning the Act, Senator Danforth, one of the Act's chief sponsors, explained the insertion of § 402(b) as follows:

[Section 402(b) ] is intended only to provide additional assurances that the provisions of this bill will not be applied to certain cases that fit the provisions of that subsection. It should not be read in derogation of the sponsors' *intention not to provide for retroactive effect or application* [of the Act].

137 Cong.Rec. S15483 (daily ed. Oct. 30, 1991) (emphasis added).

**4.**  It should be noted that the Supreme Court has recognized that, while remarks made by legislators in general have little bearing on the determination of congressional intent, a statement of a legislative sponsor "deserves to be accorded substantial weight in interpreting the statute." *See, e.g., North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 527, 102 S.Ct. 1912, 1921, 72 L.Ed.2d 299 (1982) (the legislative sponsor is "an authoritative guide to the statute's construction").

In this instance, however, Senator Danforth's statements are offset by Senator Kennedy, the other principal sponsor, who apparently believed and/or desired that the Act would apply retroactively.

similar, with the republicans saying "no" to retroactivity and the democrats saying "yes." *See, e.g., Id.* at H953—31, H9548, and H9549 (daily ed. Nov. 7, 1991).

In sum, the legislative history is both partisan and unclear. Judge Gesell in *Van Meter* aptly stated that "[t]he congressional 'debates' were, with few exceptions, hardly more than a series of declarations and counter-declarations, which often addressed 'retroactivity' without defining that term or focusing on the crucial, separate problem at issue here of how the 1991 Act was supposed to affect federal employment cases pending before the Courts." *Van Meter,* 778 F.Supp. at 84. This Court, therefore, cannot make a determination as to retroactivity based on the legislative history.

## C. *Legal Presumptions*

Because both the language of the Act and the legislative history are unclear, the Court must look at whether retroactivity or prospectivity is presumed to apply under the law. Unfortunately, this issue is not altogether clear either.

Mr. Khandelwal relies on *Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), to support his argument that in the absence of congressional intent, there is a presumption in favor of retroactivity. The *Bradley* Court specifically "rejected the contention that a change in the law is to be given effect in a pending case only where that is the clear and stated intention of the legislature." *Id.* at 715, 94 S.Ct. at 2018. The Supreme Court further stated that, with some exceptions, "a court is to apply the law in effect at the time it renders a decision...." *Id.* at 711, 94 S.Ct. at 2016. The two exceptions to the *Bradley* presumption of retroactive effect are: if manifest justice to one of the parties would result, or if Congress clearly intends otherwise. *Id.*

The defendant, on the other hand, relies on a different line of cases and Supreme Court precedent. In *Bowen v. Georgetown Univ. Hosp.,* the Supreme Court, citing a long line of cases, held that "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). Absent a clear mandate from Congress, new statutes are assumed to apply prospectively.

The presumption against retroactivity embodied in *Bowen* is well-entrenched in American jurisprudence. The "first rule of construction is that legislation must be considered as addressed to the future, not the past." *Union Pacific Railway v. Laramie Stockyards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913) (quoted more recently in *Ralis v. RFE/RL Inc.,* 770 F.2d 1121, 1127–28 (D.C.Cir.1985)). "The presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such construction if it is susceptible to any other." *United States v. Sec. Indus. Bank,* 459 U.S. 70, 80, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982).

Both plaintiff and defendant attempt to distinguish *Bradley* and *Bowen,* and strive to apply their precedent of choice to the facts of this particular case.[5] However, the Supreme Court itself has recognized

---

**5.** If the Court were to distinguish *Bradley* and *Bowen* on their facts, the defendant would have the better argument. *Bradley* is factually dissimilar to the case at bar. *Bradley* addressed whether an appellate court should apply retroactively an attorneys' fees statute enacted during the pendency of the appeal. The new statute created no additional source of liability and had no potential effect on a finding of liability. Furthermore, retroactive application did not require consideration of any case-dispositive issues. Under these facts, the Court allowed the new statute to be applied retroactively.

In the case at bar, by contrast, retroactive application of the new Act prior to trial will

effect both how liability is found and the amount of any liability. Entirely new sanctions have been created by the Act where they did not exist before—compensatory and punitive damages. There can be no dispute that a right to seek compensatory damages in a jury trial is a major substantive provision. With these new sanctions necessarily comes the requirement that courts consider different and dispositive issues, such as whether the plaintiff has suffered injury entitling him to money damages, including emotional distress damages. *Bradley* may very well have not been intended to apply to such a case.

"the apparent tension between the two lines of precedent governing retroactive application that are represented by *Bradley* ... and *Bowen*...." *Kaiser Aluminum Chem. Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 1576–77, 108 L.Ed.2d 842 (1990). It nonetheless declined to reconcile the divergent lines of cases represented by these two opinions. *Id.* 110 S.Ct. at 1577. In a concurring opinion, Justice Scalia criticized the Court for not taking up this challenge. Marshalling history, precedent, and reason, he counseled a return to the traditional presumption against retroactive application of statutes, absent a clear legislative intent to the contrary. *Id.* 110 S.Ct. at 1579.

■ Where it must choose between the two lines of cases, this Court believes *Bowen* to be the better rule: courts should not retroactively apply statutes or regulations without a clear indication that the legislature intends to diverge from the norm of acting prospectively. 488 U.S. at 214–15, 109 S.Ct. at 474–75. The presumption against retroactive application best preserves the distinction between courts and legislatures: the former usually act retrospectively, settling disputes between persons, the latter usually act prospectively, setting the general rules for future conduct. *Simmons v. Lockhart,* 931 F.2d 1226, 1230 (8th Cir.1991) (stating that *Bowen* is the better rule and holding that the attorneys' fee provisions of the Anti–Drug Abuse Act of 1988 do not apply retroactively); *see also, Wilson v. United States,* 917 F.2d 529, 537 (Fed.Cir.1990) ("*Bowen* is the current standard-bearer ... we cast our lot with the *Bowen* camp, which has the benefit of fairness and common sense.").

It may also be important to note that *Bowen* is a 1988 decision; *Bradley* is a 1974 decision. Thus, *Bowen* more likely reflects the views of the current Supreme Court. Furthermore, the presumption of prospective application of statutes is supported by over 180 years of Supreme Court precedent. *See, e.g., United States Fidelity & Guaranty Co. v. United States,* 209 U.S. 306, 314, 28 S.Ct. 537, 52 L.Ed. 804 (1908); *United States v. Heth,* 7 U.S. (3 Cranch) 399, 413, 2 L.Ed. 479 (1806). *Bowen* is simply a recent restatement of the long-followed presumption of prospective application.

### D. Other District Court Cases

The Court is aware of nine other federal district court decisions regarding the retroactive application of the Act. These cases are helpful to the Court, although not conclusive. Four of these decisions hold that the Act should not be applied retroactively. *Van Meter v. Barr,* 778 F.Supp. at 83 (D.D.C.1991); *Hansel v. Public Service Co.,* 778 F.Supp. 1126 (D.Colo.1991); *Alexander v. AMP, Inc.,* 57 FEP Cases (BNA) 768 (W.D.Penn. Dec. 5, 1991); *James v. American International Recovery, Inc.,* 1991 WL 281734, 1991 U.S.Dist.Lexis 18408 (N.D.Ga. Dec. 3, 1991). The *Van Meter* and *Hansel* courts ruled that the Act should not be applied retroactively and based their decisions on reasoning similar to that discussed above. In brief orders, the *Alexander* and *James* cases reached the same conclusion as to the non-retroactivity of the Act without elaborating as to the reasons behind such a ruling.

The plaintiff informs the Court that five district court cases have held that the 1991 Act should be applied retroactively. *Stender v. Lucky Stores, Inc.,* 1991 Daily Lab. Rep. (BNA) No. 250, at A–5 (N.D.Cal. Dec. 19, 1991) (not found); *King v. Shelby Medical Center,* 779 F.Supp. 157 (N.D.Ala.1991); *Davis v. Tri–State Mack Distributions Inc.,* 1991 Daily Lab.Rep. (BNA) No. 250, at A–5 (E.D.Ark. Dec. 16, 1991) (not found); *La Cour v. Harris County,* 57 FEP Cases (BNA) 622 (S.D.Tex. Dec. 6, 1991); *Mojica v. Gannett Co.,* 779 F.Supp. 94 (N.D.Ill. 1991). The Court is not persuaded by these decisions.

The Court could not locate a copy of the *Stender* or *Davis* decisions, and the *La Cour* case simply ordered that the Act be applied retroactively without stating a basis for this decision. In *Mojica,* Judge Hart determined that the Act was to be applied retroactively, based primarily on the Seventh Circuit's holding that *Bradley*

is the better rule to follow in matters concerning retroactivity. 779 F.Supp. at 96 (referring to *Federal Deposit Insurance Corp. v. Wright*, 942 F.2d 1089, 1095 (7th Cir.1991)). As has been discussed above, this Court rejects the *Bradley* presumption in favor of the *Bowen* line of cases. As in *Mojica*, the court in *King* felt bound to apply the Eleventh Circuit's decision in *United States v. Peppertree Apartments*, 942 F.2d 1555 (11th Cir.1991), which held that the double damages provisions of a recent legislative enactment were to be applied retroactively. 1991 U.S.Dist.Lexis 18228, at 2. This court is, of course, not bound by either the rulings of the Seventh or the Eleventh Circuits.[6]

### CONCLUSION

Under *Bowen*, there is a strong presumption against applying new statutes retroactively. Nothing in the new Act or its legislative history provides a clear mandate or even seriously suggests congressional intent to the contrary. Likewise, mandatory and persuasive case authority and plain logic compel the prospective application of the Act.

Under Rule 15(a) of the Federal Rules of Civil Procedure, a motion for leave to amend a pleading is to be granted "freely" by the Court only "when justice so requires." Where the amendment is based on a point of law which the Court has determined to be incorrect, it would be futile and not in the interests of justice to grant leave to amend the pleading. In the case at bar, sound legal authority compels prospective application of the new Act and, therefore, denial of Plaintiff's Motion to Amend.

---

**6.** The Court of Appeals for the Fourth Circuit has indicated a preference for the *Bowen* approach. In *Leland v. Federal Insurance Administrator*, 934 F.2d 524, 528–29, (4th Cir.1991), the court thoroughly discusses and eventually follows *Bowen* in holding that recent amendments to the National Flood Insurance Act should not be applied retroactively. A cursory discussion of whether such a ruling would be warranted under *Bradley* is relegated to footnote status. *Id.* at 528 n. 7.