Matthus M. WEST

v.

**PELICAN MANAGEMENT
SERVICES CORP.**

**Civ. A. No. 91–0363–A.**

United States District Court,
M.D. Louisiana.

Feb. 3, 1992.

Lisa Degruy, Covington, La., for plaintiff Matthus M. West.

H. Sloan McCloskey, New Orleans, La., for defendant Pelican Management Services Corp.

**RULING**

CHRISTINE A. NOLAND, United States Magistrate Judge.

This consent case comes before the Court on the motion of the plaintiff for a jury trial on his sex discrimination claim. The plaintiff, Matthus M. West, filed his complaint against Pelican Management Services Corporation ("Pelican") on April 2, 1991, asserting sex discrimination, age discrimination and overtime pay claims arising from his prior employment with Pelican as a real estate property manager. The plaintiff bases his request for a jury trial on his sex discrimination claim upon certain provisions of the Civil Rights Act of 1991, which was signed into law on November 21, 1991. Section 102 of the Act adds a new section, 42 U.S.C. § 1981a, which, in pertinent part, provides for the recovery of compensatory and punitive damages in intentional employment discrimination cases under Title VII and allows for a right to trial by jury when compensatory or punitive damages are sought under the new Section. 42 U.S.C. § 1981a(a)(1) & (c)(1) (1991).[1] Section 402(a) of the 1991 Act provides that "[e]xcept as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment."

■ The basic question posed therefore is whether 42 U.S.C. § 1981a(c)(1) applies retroactively to permit a party to obtain a jury trial in a pending intentional sex discrimination case where the claim is based on alleged discriminatory practices occurring prior to the date on which the statute was enacted, November 21, 1991. The lower court authorities on this question are split. From the briefs submitted by the parties and the Court's own independent research, it appears at this writing that at least three district courts have held that a jury trial is not available under Section 1981a(c)(1) in cases based on pre–Act conduct and that at least two other district courts have taken the contrary position, holding that a jury trial is available in

1. Subsection 1981a(a)(1) provides in pertinent part that "[i]n an action brought by a complaining party ... against a respondent who engaged in unlawful intentional discrimination ..., the complaining party may recover compensatory and punitive damages ... in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964...." Subsection 1981a(c)(1) provides that "[i]f a complaining party seeks compensatory or punitive damages under this section ... any party may demand a trial by jury...."

pending cases involving preenactment conduct. *Compare Khandelwal v. Compuadd Corp.*, 780 F.Supp. 1077 (E.D.Va. 1992) (no jury trial); *Van Meter v. Barr*, 778 F.Supp. 83 (D.D.C.1991) (same) *and High v. Broadway Industries, Inc.*, No. 90–1066–CV–W–3, 1992 WL 33860 (W.D.Mo., Jan. 7, 1992) *with King v. Shelby Medical Center*, 779 F.Supp. 157 (N.D.Ala.1991) (jury trial) *and Mojica v. Gannett Co.*, 779 F.Supp. 94 (N.D.Ill.1991) (same).[2]

The issue presented here, however, is not simply a procedural question of whether a jury trial now is available under the Civil Rights Act of 1991 on a potential liability that existed prior to the Act. Rather, the right to a jury trial under subsection (c)(1) of Section 1981a arises only when the complaining party has a right to seek compensatory or punitive damages under the newly-adopted provisions of subsection (a)(1) of Section 1981a.[3] That is, under the express language of the statute, the right to a jury trial under subsection (c)(1) turns upon the availability of the newly-created remedies of compensatory and punitive damages under subsection (a)(1).

Thus, at bottom, the controlling issue here is whether 42 U.S.C. § 1981a*(a)(1)* applies retroactively to permit recovery of compensatory and/or punitive damages in cases based on alleged discrimination that occurred prior to the enactment of the Civil Rights Act of 1991 on November 21, 1991. If compensatory and punitive damages can be recovered under Section 1981a(a)(1) for pre-enactment conduct, then a party can obtain a jury trial under subsection (c)(1) on

a claim arising prior to November 21, 1991. If, on the other hand, subsection (a)(1) is not retroactive, and if compensatory and punitive damages therefore are not available for pre-enactment conduct, then a party will not be able to obtain a jury trial under subsection (c)(1) in a case arising prior to the enactment date.[4]

The task of resolving this retroactivity question is not at all made easier by the fact that the legislative history contains expressions on both sides of the issue. *Compare* 137 Cong.Rec. S 15483 (remarks of Sen. Danforth) (Act not retroactive) *with* 137 Cong.Rec. S 15963 (remarks of Senator Kennedy) (Act retroactive). Nor is the task made any easier by two apparently inconsistent lines of Supreme Court authority on the statutory rule of construction to be followed in this situation. *Compare Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ("congressional enactments ... will not be construed to have retroactive effect unless their language requires this result") *with Bradley v. School Board of City of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) ("a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary"); *see also Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990) (noting, but not resolving, the "apparent tension" between *Bowen* and *Bradley*); *id.*, at 1579– 88 (Scalia, J., concurring) (advocating rejection of *Bradley* rule). The Court concludes, how-

---

**2.** *See also Hicks v. Brown Group, Inc.*, 952 F.2d 991 (8th Cir.1991) (declining to conduct en banc review of the retroactivity question under the Act in another context so that the parties could present a certiorari petition to the Supreme Court); *Hansel v. Public Service Company*, 778 F.Supp. 1126 (D.Colo.1991) (provision for compensatory damages not retroactive).

**3.** *"If a complaining party seeks compensatory or punitive damages under this section ... any party may demand a trial by jury...."* 42 U.S.C. § 1981a(c)(1) (emphasis-added). Subsection (b)(2) of Section 1981a specifically excludes "backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964" from the definition of "compensatory damages" under Section 1981a.

42 U.S.C. § 1981a(b)(2). Thus, a jury trial cannot be obtained under subsection (c)(1) on the premise that the backpay relief historically allowed in Title VII cases constitutes a form of compensatory damages allowed under Section 1981a.

**4.** This Court therefore does not agree with the district court's statement, in *King v. Shelby Medical Center, supra,* that the issue of retroactivity application presented here involves "purely and simply a 'procedural' question." *See King,* at 158. Under the specific statutory language used in 42 U.S.C. § 1981a, the jury trial issue is completely intertwined with the substantive matter of whether compensatory and punitive damages are available.

ever, after reviewing the available indicia of Congressional intent, that, on balance, the better view is that the Act's provisions pertaining to recovery of compensatory and/or punitive damages and the accompanying right to a jury trial do not apply retroactively to pending cases arising out of alleged discriminatory conduct occurring prior to November 21, 1991.

■ Where congressional intent is clear from the plain language of the statute, that clear statutory expression of congressional intent governs. *E.g., Kaiser Aluminum,* 110 S.Ct. at 1577. Here, the Court will assume, *arguendo,* that the plain language of the statute does not clearly express congressional intent with regard to the issue of retroactive versus prospective application of the Act. Section 402(a) of the Act states that "[e]xcept as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." If there truly is a difference between a statute *taking* effect on a certain date and the statute *having* effect before, on or after that date,[5] then it would appear that Section 402(a) does not clearly speak to the question of whether the Civil Rights Act of 1991 will have retroactive as opposed to purely prospective effect. That is, the statute does not expressly state that it either will or will not *have* effect prior to the time that it *takes* effect. Or, phrased another way, the language of the statute does not explicitly address the matter of whether the Act applies to cases that are pending on the date on which it "takes effect" or, instead, applies only to claims arising on and after the date on which it takes effect. *See EEOC Guidance on Retroactivity of Civil Rights Act of 1991,* issued January 2, 1992, at 2.[6] The Court therefore will assume, *arguendo,* that the plain language of Section 402(a) of the Act does not resolve the issue and will turn to other available interpretative tools.

Of course, the difficulty that the lower federal courts have encountered in this regard is that *Bradley* and *Bowen* do not appear to be consistent with or reconcilable with each other, leaving the basic rule of statutory construction in doubt. *Bradley* suggests that statutes should be construed to have retroactive effect and to apply to cases pending on their date of enactment unless there is a statutory directive or legislative history to the contrary. *See* 416 U.S. at 711–16, 94 S.Ct. at 2016–18. And *Bowen* suggests exactly the opposite, *i.e.,* that statutes should be construed to apply only prospectively unless Congress specifies otherwise. *See* 109 S.Ct. at 471; *see also Kaiser Aluminum,* 110 S.Ct. at 1577 (a "generally accepted axiom").

Without dwelling too extensively on this conflict, which is beyond this Court's power to authoritatively resolve, it appears to this Court that *Bradley* should be read narrowly and that the decision does not state a rule of general application having any significant vitality outside of the particular context presented in *Bradley.* The *Bradley* decision held that Section 718 of Title VII of the Emergency School Aid Act, codified at 20 U.S.C. § 1617, which provided for the recovery of attorneys' fees in school desegregation cases, authorized an award of fees for services rendered prior to the date of the statute's enactment where the issue of the propriety of the fee award already was pending resolution on appeal in the case when the statute became law. *See* 416 U.S. at 710 & 724, 94 S.Ct. at 2015 & 2022. In so holding, the Supreme Court specifically and expressly noted that its decision in *Bradley* did *not* purport "to hold that courts must always ... apply new laws to pending cases in the absence of clear legislative direction to the contrary." 416 U.S. at 715, 94 S.Ct. at 2018. And, further, the Supreme Court relied upon legislative history which, although not conclusive, "seem[ed] to provide at least implicit support for the application of

---

**5.** *Cf. Kaiser Aluminum,* 110 S.Ct. at 1590 (White, J., diss.):

Congress is able to recognize a distinction ... between a statute *taking* effect on a certain date, in the sense that its provisions are not to be applied by a court before that date passes,

and a statute *having* effect only after that date, in that its provisions may not be applied even to cases pending at that time.

**6.** Attached as Appendix "F" to Pelican's opposing memorandum.

the statute to pending cases." [7] In light of these expressions in *Bradley*, this Court concludes that the rationale and holding of the decision do not extend to the context presented here. That is, the Court concludes that the *Bradley* decision—read against the backdrop of prior law holding that statutes are not to be construed to have retroactive effect except when their language directs this result [8]—does not contemplate or require that a new statute authorizing the recovery of compensatory and punitive damages must be applied retroactively to pre-enactment conduct notwithstanding the complete absence of any language in the statute suggesting that Congress intended to impose such a new liability retroactively.[9]

Accordingly, the Court will apply the rule of statutory construction reflected in *Bowen* to this issue, such that the Court will follow the generally accepted rule that a statute will be construed to have retroactive effect only where there is a clear expression of congressional intent that it have such an effect.[10] Application of this rule to Section 402(a) of the Civil Rights Act of 1991 leads to the conclusion that the statute should not be construed to operate retroactively with respect to the recovery of compensatory or punitive damages or with respect to the provision for a jury trial. Section 402(a) does not contain any language that at all addresses the issue, much less language that at all suggests that the Act should be applied retroactively to pending cases involving pre-enactment conduct. In the past, when Congress has intended for a statute to apply retroactively to pre-enactment conduct in pending cases, it has had no difficulty in finding language that clearly expresses that intent.[11] No such language was used in Section 402(a) and the Court therefore concludes that the damages and jury trial provisions of the Civil Rights Act of 1991 do not apply retroactively to pre-enactment conduct.

Moreover, the Court finds that, on balance, the legislative history of the Act sup-

---

**7.** 416 U.S. at 716, 94 S.Ct. at 2018. The Court referred to the fact that a prior version of the bill had provided for recovery of attorneys' fees only "for services rendered, and costs incurred, after the date of enactment of this Act," which the Court suggested lead to an inference that the omission of any such language in the version of the bill that became law reflected Congress' intent to not limit the reach of the Act to only purely prospective effect. *See* 416 U.S. at 716 n. 23, 94 S.Ct. at 2018 n. 23. Exactly the opposite inference follows from the legislative history of the Civil Rights Act of 1991, however. Prior versions of the civil rights legislation specifically provided that the jury trial provisions of the Act would "apply to all proceedings pending on or commenced after the date of the enactment of this Act," but this retroactivity language was not carried forward into the Act itself. *See* the discussion and citations, *infra*, at n. 14. Quite unlike the situation presented in *Bradley*, the omission of this language from the final version of the Act rather strongly leads to the inference that the law was not intended to have retroactive effect.

**8.** *See generally Kaiser Aluminum*, 110 S.Ct. at 1579–88 (Scalia, J., concurring) (canvassing prior law).

**9.** *See also id.*, at 1583 (Scalia, J., concurring) ("It is at least arguable [in considering the reach of *Bradley*] that it does not constitute retroactive application to apply a provision dealing with the award of costs or fees in litigation to all litiga-

tion that has not yet terminated when the provision takes effect.").

**10.** *Accord Simmons v. Lockhart*, 931 F.2d 1226, 1230 (8th Cir.1991) (following *Bowen* rule over *Bradley*); *Wilson v. United States*, 917 F.2d 529, 537 (Fed.Cir.1990) (same); *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.*, 911 F.2d 1377, 1388–1393 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991) (same); *see also United States v. Murphy*, 937 F.2d 1032, 1036–38 (6th Cir.1991) (similar); *Walker v. United States Dept. of Housing and Urban Development*, 912 F.2d 819, 831 (5th Cir.1990) (the Fifth Circuit distinguished *Bradley* and instead referred to the general proposition, in *Bowen*, that laws should not be construed retroactively unless their language so requires). *But see United States v. Peppertree Apartments*, 942 F.2d 1555, 1561 n. 3 (11th Cir.1991), *petition for cert. filed*, 60 U.S.L.W. 3500 (U.S. Dec. 26, 1991) (No. 91–1075) (following *Bradley*); *Federal Deposit Insurance Corp. v. Wright*, 942 F.2d 1089, 1095 (7th Cir.1991) (similar).

**11.** *See, e.g.,* Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub.L. No. 98–426, § 28(a), 98 Stat. 1639, 1655 (1984) ("Except as otherwise provided in this section, the amendments made by this Act shall be effective on the date of enactment of this Act and shall apply both with respect to claims filed after such date and to claims pending on such date.")

ports the conclusion that the damages and jury trial provisions do not apply retroactively. The plaintiff urges that the specific provision in Sections 109(c) and 402(b) against retroactive application of certain portions of the Act[12] supports the inference that the remainder of the Act therefore must apply retroactively. West urges, not without some force, that the remaining portions of the Act should be construed to apply retroactively under Section 402(a) because any other construction of the Act would render Sections 109(c) and 402(b) unnecessary, contrary to the tenet of statutory construction that statutes should be construed, whenever possible, in a manner that does not render any of their provisions superfluous. This Court does not find that this rule of statutory construction—which, after all, is only an *aid* in divining congressional intent—applies with compelling force in the present situation, however. There is legislative history supporting the view, at least with respect to Section 402(b), that

Congress was securing "additional assurances" against retroactive effect with respect to particular matters.[13] The presence of this legislative history seriously undermines any reliance on the notion that Congress would not have adopted superfluous or redundant provisions in the Civil Rights Act of 1991 with respect to retroactivity. Thus, the Court does not find that the presence of these provisions prohibiting retroactive application of specific provisions of the Act compels the conclusion that the remainder of the Act therefore must apply retroactively.

What is significant to this Court is that, prior to the enactment of the Civil Rights Act of 1991, three attempts were made to enact civil rights legislation that included provisions that expressly and specifically provided that substantial portions of the legislation, including those involved here, would apply retroactively to pending cases. These three attempts all proved unsuccessful and a specific and express provision for

**12.** Section 109(c) of the Act provides that the amendments in that section, which extend Title VII and the Americans with Disabilities Act to American citizens employed abroad, "shall not apply with respect to conduct occurring before the date of the enactment of this Act." *See* Pub.L. No. 102–166 § 109(c), 105 Stat. 1071, 1078 (1991). Section 402(b) of the Act provides that "[n]otwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983." 105 Stat. at 1099.

**13.** *See* 137 Cong.Rec. S 15483 (remarks of Senator Danforth) ("Our intention in drafting the effective date provision was to adhere to the principle followed by the vast majority of Supreme Court cases and exemplified by *Bowen* and Justice Scalia's concurrence in *Bonjorno.* Subsection [402(b)], regarding certain disparate impact cases, is intended only to provide additional assurance that the provisions of the bill will not be applied to certain cases that fit the provisions of that subsection. It should not be read in derogation of the sponsor's intention not to provide for retroactive effect or application ...."); 137 Cong.Rec. S 15478 (section-by-section analysis representing the views of the administration and Senators Burns, Cochran, Dole, Garn, Gorton, Grassley, Hatch, Mack, McCain, McConnell, Murkowski, Simpson, Seymour and Thurmond) ("Section [402] specifies that the Act and the amendments made by the

Act take effect upon enactment. Accordingly, they will not apply to cases arising before the effective date of the Act. *See* [*Bowen* and *Kaiser Aluminum.*] At the request of the Senators from Alaska, section [402(b)] specifically points out that nothing in the Act will apply to the Wards Cove Packing Company, an Alaska company that spent 24 years defending against a disparate impact challenge.") 137 Cong.Rec. S 15953 (material submitted by Senator Dole) ("Absolutely no inference is intended or should be drawn from the language of this amendment to section 402 that the provisions of the Act of the amendments it makes may otherwise apply retroactively to conduct occurring before the date of enactment of this Act. Such retroactive application of the Act and its amendments is not intended; on the contrary, the intention of this amendment to Section 402 is simply to honor a commitment to eliminate every shadow of a doubt as to any possibility of retroactive application to the case involving the Wards Cove Company. .... Thus, it is not 'up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment.'" (quoting remarks of Senator Kennedy). *But see* 137 Cong.Rec. S 15963 (remarks of Senator Kennedy) ("Many Senate Republicans and the administration favored including language stating that the bill applied to no pending cases. Instead, the Senate accepted Senator Murkowski's amendment, which only keeps the bill from applying to the parties in the *Wards Cove* case itself, which had already been litigated through the Supreme Court.")

retroactive effect is notably absent from the final version of the legislation that was enacted into law with the President's signature.[14] The Court finds that the omission of retroactive language from the final version of the Act quite strongly leads to the inference that the law was not intended to have general retroactive effect, particularly as the issues involved in the legislation were highly controversial and the final language of the law was hammered-out through hard-fought compromise. If the final language of the Act did not include previously-drafted provisions expressly providing for retroactive application, then it would seem that the practical reality of the situation is that there were not sufficient votes available to pass retroactive legislation or, at the very least, to override a presidential veto of legislation with retroactive effect. If there were not sufficient votes to enact a statute having provisions for retroactive effect, then the statute that was passed necessarily must be a statute of only prospective effect. Any other construction would lead to the statute having retroactive effect despite the fact that there was not sufficient votes available to push a statute having express retroactive effect through the various checks and balances that the Constitution has established for our legislative process. It is not the province of this Court to establish, by construction and interpretation, what could not be achieved through the normal political processes of constitutional lawmaking. Accordingly, the Court concludes, even without reference to the presumption against retroactive application of statutes, that, on balance, the intent of the Congress and the President in enacting the Civil Rights Act of 1991 was to enact a law having only prospective effect.

## CONCLUSION

For the foregoing reasons, the Court concludes that a jury trial is not available on the plaintiff's Title VII claim of sexual discrimination and, accordingly, the motion for a jury trial will be DENIED. However, the Court further finds that the plaintiff's motion presents a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Court's denial of this motion may materially advance the ultimate termination of this litigation, as a definitive ruling on the issue from the United States Court of Appeals for the Fifth Circuit would avoid the possibility of a retrial herein. The Court therefore will certify this matter for an interlocutory appeal under 28 U.S.C. § 1292(b),[15] such that an appeal may be taken from the Court's order, in the Court of Appeals' discretion, if application therefore is made to the Court

**14.** The Civil Rights Act of 1990, which was vetoed by the President without being overridden, expressly provided that the provisions allowing for recovery of compensatory damages and a jury trial "shall apply to all proceedings pending on or commenced after the date of enactment of this Act." S. 2104, 101st Cong. 1st Sess. § 15(a) (1990). When the next Congress convened, the first House bill, H.R. 1, similarly provided that the damages and jury trial provisions "shall apply to all proceedings pending on or commenced after the date of enactment of this Act...." H.R. 1, 102nd Cong. 1st Sess. § 213(a)(4). H.R. 1 stalled, however, apparently under the threat of another presidential veto if passed. An amended compromise version of H.R. 1 was prepared in an apparent effort at compromise, yet section 106(a)(4) of this amended version continued to provide that the damages and jury trial provisions would "apply to all proceedings pending on or commenced after the date of enactment of this Act." The amended version of H.R. 1 did not become law, however, and, instead, the current version of the legislation, which began as S. 1745, was passed by Congress and became law with the President's signature on November 21, 1991. The provisions of the earlier bills specifically providing for application of the law to pending cases did not survive the legislative process and were not included in the final version of the bill that became law.

**15.** *Cf. Equal Employment Opportunity Commission v. Brown & Root, Inc.,* 725 F.2d 348 (5th Cir.1984) (§ 1292(b) certification of issue of whether the EEOC had a right to obtain a jury trial in an age discrimination case); *Cotten v. Witco Chemical Corp.,* 651 F.2d 274 (5th Cir. 1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 448 (1982) (§ 1292(b) interlocutory appeal allowed from trial court's grant of motion to strike jury trial demand). The Seventh Circuit has held that a magistrate judge in a consent case properly may certify a matter for interlocutory appeal under § 1292(b). *See Central Soya Company, Inc. v. Voktas, Inc.,* 661 F.2d 78 (7th Cir.1981).

of Appeals within ten days of entry of this Court's order. Any such application for appeal under Section 1292(b) will stay proceedings herein, such that the present setting of the trial for February 25, 1992 will be upset upon any such application.